Filed 1/23/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D072121 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN197963) |
| MODESTO PEREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Nina Bonyak, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

In August 2005, Modesto Perez pled guilty to possession of methamphetamine for sale (Health & Saf. Code, §11378).  Over six months later, Perez was deported to Mexico based on his conviction.

On January 1, 2017, Penal Code[1] section 1473.7 became effective. That statute allows a person no longer imprisoned or restrained to move to vacate a conviction or sentence for one of two reasons, including that "[t]he conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) Perez subsequently filed a motion to vacate his conviction under section 1473.7. The superior court denied Perez's motion.

Perez appeals, contending the court erred in denying his motion. The People counter, arguing the statute does not apply retroactively and, even if it did, Perez's motion was untimely and the record shows that he had sufficient knowledge of the immigration consequences of his plea.

We determine that section 1473.7 does apply to Perez. However, we conclude Perez has not shown he is entitled to relief under that statute. As such, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

*Guilty Plea*

The operative complaint charged Perez with possession of methamphetamine for sale (Health & Saf. Code, § 11378), among other crimes. Perez ultimately pled guilty to that charge at a hearing on August 10, 2005. The superior court noted that Perez

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

appeared to be very emotional and asked if the hearing should be postponed. As part of its inquiry, the court asked why Perez was upset: "Okay. Is this the case -- since we're using the interpreter, is this a case where Mr. Perez is a citizen of another country and afraid this will result in his --"

Perez's counsel responded, "I am sure that's a concern, when speaking in terms of totality. Sure. That's one thing. I explained it to my client. That is an issue. That will follow through after his sentence is up."

The court then offered to postpone the hearing if Perez was "too emotional to go ahead with" it. Perez did not indicate that he wanted to continue the hearing to a later time. The court then asked what Perez wanted to do and explained the immigration consequences if Perez pled guilty:

> "What would you like to do? Would you like to go ahead and plead guilty, knowing that you are going to serve 365 days in custody, and also knowing if you violated probation you could get up to three years in prison? [¶] Since I saw there was an immigration hold on your papers, you have to know that if you plead guilty, this will result in your deportation from this country. This country will refuse to let you back in, and this country will refuse to allow you to become a citizen. This is controlled by the federal government, not this court. Those are the things that will happen to you if you plead guilty. [¶] What would you like to do, go to trial or plead guilty?"

Before deciding to plead guilty, Perez asked the court about the consequences of going to trial and when trial would occur. After the court answered Perez's questions, Perez conferred with his attorney for a few minutes before he decided to plead guilty.

Upon Perez indicating that he wished to plead guilty, the court questioned Perez about the plea form Perez submitted. The court asked Perez whether he reviewed the

form very carefully with his attorney and the court interpreter. Perez responded in the affirmative. The court specifically asked Perez if the interpreter explained "everything to [him] on these forms line by line?" The court then inquired whether Perez understood everything he was told about the form and if his answers on the form were correct. Again, Perez responded in the affirmative.

After the court explained to Perez that he would be waiving certain constitutional rights, Perez pled guilty to the offense of possession of methamphetamine for sale.

Perez's plea form appears in the record. As pertinent here, the form states, "I understand that if I am not a U.S. Citizen, this plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an 'Aggravated Felony' listed on the back of this form, then I **will** be deported, excluded from admission to the U.S., and denied naturalization." Perez's initials appear in the box next to that statement.

On the back of the plea form, felony possession of any controlled substance is listed as an aggravated felony.

The form also contained the following statement, signed by Perez's attorney:

> "I, the attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea, including any immigration consequences. I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights."

4

Additionally, the form contained a statement signed by the interpreter:

> "I, the sworn Spanish language interpreter in this proceeding, truly translated for the defendant the entire contents of this form and any attached addendum. The defendant indicated understanding of the contents of this form and any addendum and then initialed the form and any addendum."

*The Motion to Vacate*

On February 21, 2017, Perez filed a motion to vacate conviction based on section 1473.7. In his motion, Perez argued that (1) his counsel violated the duty to investigate and accurately advise him about the specific immigration consequences of a plea; (2) his counsel failed to defend against immigration consequences of a plea by attempting to plea bargain for an immigration safe alternative disposition; and (3) Perez failed to meaningfully understand the immigration consequences of the conviction.

Among other material offered in support of his motion, Perez submitted multiple self-declarations.[2] In one such declaration, Perez indicated that he did not understand what was happening at the hearing at which he pled guilty. He claimed that his attorney did not explain other options or the immigration consequences if he pled guilty. Perez further declared that he only pled guilty because he was not aware of and did not understand all the consequences of his guilty plea. Moreover, he asserted that, despite the presence of a Spanish interpreter, he still did not "completely comprehend what [he] was initialing because, [he] only ha[s] an elementary education and [was] not familiar with technical legal terms in Spanish and [he] did not have meaningful understanding of

---

[2] The declarations were English translations of Perez's oral statements, which he made in Spanish.

5

the documents." Finally, Perez insisted that he would not have signed the plea form had he known he would have been deported, but instead, he would have been willing to serve a longer prison sentence to avoid deportation.

The People opposed Perez's motion, contending the motion was untimely and Perez understood and was advised of the immigration consequences of his plea.

At the hearing on Perez's motion, his attorney declined the opportunity to argue and submitted on the tentative ruling. The court then adopted its tentative and denied the motion. In the law and motion minutes contained in the record, the court denied the motion with the following handwritten explanation:

> "[Six months] after the [defendant's] sentencing[,] he was deported based on this conviction. At that point he was aware of consequences [and] had the option of bringing a writ of habeas corpus or motion to vacate purs[uant to] [section] 1016.5. This matter is untimely."

Perez timely appealed.

## DISCUSSION

Section 1473.7 provides: "A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence" for one of two reasons, including that "[t]he conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) The motion must be made with "reasonable diligence" after the party receives notice of pending immigration proceedings or a removal order. (§1473.7, subd. (b).) The court must hold a hearing on the motion, and if

6

the moving party establishes by a preponderance of the evidence that he or she is entitled to relief, the court must allow the person to withdraw his or her plea.  (§ 1473.7, subd. (e).)[3]

As a threshold matter, the People argue that section 1473.7 is not retroactive; thus, it cannot apply to Perez, who pled guilty and was deported before section 1473.7 became effective.[4]  To this end, the People compare section 1473.7 with sections 1016.5,

---

[3]	In full, section 1473.7, states:  "(a) A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence for either of the following reasons:  [¶] (1) The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  [¶] (2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice.  [¶] (b) A motion pursuant to paragraph (1) of subdivision (a) shall be filed with reasonable diligence after the later of the following:  [¶] (1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal.  [¶] (2) The date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final.  [¶] (c) A motion pursuant to paragraph (2) of subdivision (a) shall be filed without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section.  [¶] (d) All motions shall be entitled to a hearing.  At the request of the moving party, the court may hold the hearing without the personal presence of the moving party if counsel for the moving party is present and the court finds good cause as to why the moving party cannot be present.  [¶] (e) When ruling on the motion:  [¶] (1) The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a).  [¶] (2) In granting or denying the motion, the court shall specify the basis for its conclusion.  [¶] (3) If the court grants the motion to vacate a conviction or sentence obtained through a plea of guilty or nolo contendere, the court shall allow the moving party to withdraw the plea.  [¶] (f) An order granting or denying the motion is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of a party."

[4]	Perez does not address retroactivity whatsoever.

1203.4a, and 1473.6. They contend that those sections indicate that the Legislature understands how to explicitly state when a statute applies retroactively. Because section 1473.7 does not contain analogous language, the People maintain the Legislature did not intend it to apply retroactively. We find the specific language of sections 1016.5, 1203.4a, and 1473.6 not helpful to our analysis here.

Section 1016.5, subdivision (c) specifically states that the statute is not retroactive: "With respect to pleas accepted prior to January 1, 1978, it is not the intent of the Legislature that a court's failure to provide the advisement required by subdivision (a) of Section 1016.5 should require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid. Nothing in this section, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea." Section 1203.4a, which requires a trial court to dismiss misdemeanor or infraction convictions in certain circumstances (*People v. Sanders* (2012) 55 Cal.4th 731, 741), specifically states it applies to convictions occurring before and after the statute's effective date, (§ 1203.4a, subd. (d)). And section 1473.6 allows a defendant to move to vacate a judgment based on newly discovered evidence of fraud, false testimony, or misconduct by a government official in connection with the underlying case. (§ 1473.6, subd. (a)(1), (2), & (3).) That statute includes a time limit by which a defendant can seek relief under the statute. (See § 1473.6, subd. (d) [within one year of the date the new evidence was or reasonably could have been discovered or the effective date of the statute, whichever is later].) These statutes do not indicate that the Legislature uses a specific type of language when

8

decreeing a statute is retroactive. Indeed, the statutes underscore the opposite conclusion. The Legislature uses no uniform language, but instead, offers clarification as it sees fit.

For example, it is not surprising that the Legislature would expressly include a provision stating that section 1016.5 is not retroactive because it created a new requirement for a superior court to provide defendants with a specific warning before it accepted a plea of guilty or nolo contendere. (See § 1016.5, subd. (a).)[5] The Legislature did not want to give a defendant a new mechanism by which to challenge a conviction based on a requirement that did not exist at the time the defendant was convicted. Thus, it explicitly stated that the statute was not to be applied retroactively. In comparison, for section 1203.4a, a statute requiring the superior court to take a certain action, the Legislature expressly designated that section applied retroactively. (§ 1203.4a, subd. (d).) Showing an additional drafting style, the Legislature did not declare specifically whether section 1473.6 is retroactive, but instead, provided a cut off by which a motion under that statute must be brought. (§ 1473.6, subd. (d)(1) & (2).)[6] Thus, to the extent the three statutes relied upon by the People provide any guidance here,

_____

[5] Section 1016.5, subdivision (a) provides: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

[6] The time frame in which a defendant must file a motion under section 1473.6 based on newly discovered evidence is similar to the time frame under section 1473.7 based on newly discovered evidence. (Compare § 1473.6, subd. (d)(1) & (2) with § 1473.7, subd. (c).)

they suggest that we need to look to the specific words and consider the purpose of section 1473.7 in determining whether it applies to Perez. In terms of statutory interpretation, this approach is not new. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-634; *Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862; *People v. Ramirez* (1995) 33 Cal.App.4th 559, 563.)

Section 1473.7 contains three requirements. First, the moving party can no longer be imprisoned or restrained. (§ 1473.7, subd. (a).) Therefore, from the beginning of the statute, it is clear that the statute is backward looking. It requires a person seeking relief under it to have been imprisoned or restrained at some point in the past, but not currently. Second, the statute provides two reasons to challenge a conviction or sentence: (a) prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere (§ 1473.7, subd. (a)(1)); or (b) newly discovered evidence of actual innocence (§ 1473.7, subd. (a)(2)). Here, the former reason is at issue. Third, any motion must be timely. For a challenge like the one Perez raises here, the statute declares that a motion must be "filed with reasonable diligence after the later of the following: [¶] (1) [t]he date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence is a basis for removal. [¶] (2) The date a removal order against the moving party, based on the existence of a conviction or sentence, becomes final." (§ 1473.7, subd. (b)(1) & (2).)

10

Unlike section 1016.5, section 1473.7 does not contain an explicit subdivision stating the statute is not to be applied retroactively. (§ 1016.5, subd. (c).) That said, there is no specific indication in section 1473.7 that it is to be applied retroactively like subdivision (d) of section 1203.4a. Instead, section 1473.7 is somewhat like section 1473.6 in that both statutes contain a timeliness provision. (Compare § 1473.7, subd. (b)(1) & (2), (c) with 1473.6, subd. (d)(1) & (2).) Thus, on a plain reading of the statute, it appears a moving party can seek relief under it if he or she satisfies the statute's three requirements.

The People argue that these three requirements underscore that section 1473.7 is to be applied prospectively only. To support their position, the People offer a hypothetical involving a defendant who pled guilty after the effective date of the statute, was placed on probation, and six months later, Immigration and Customs Enforcement (ICE) officials take him into custody and begin deportation based on the plea and conviction. Under this scenario, the People assert the hypothetical defendant can seek relief under section 1473.7. Further, the People argue that their hypothetical illustrates that the application of section 1473.7 only on a prospective basis is consistent with the statute's purpose.

We agree with the People that they have presented a situation under which a defendant can seek relief pursuant to section 1473.7. Nevertheless, we do not read the statute as limiting relief as to defendants who pled guilty only after the statute's effective date. For example, a defendant could have pled guilty, in December 2015, to a felony that would subject him to deportation (e.g., possession of methamphetamine for sale).

11

The court then sentenced that defendant to jail for 364 days with probation upon release. The defendant served his jail time, and a few weeks after his release, ICE picked him up and began deportation proceedings on February 13, 2017. Two weeks later, the defendant filed a motion under section 1473.7 to vacate his conviction, claiming that he did not meaningfully understand the immigration consequences of his guilty plea. Under this hypothetical, we see no impediment in section 1473.7 that would prohibit the defendant from seeking relief under that statute. The defendant is no longer in state custody. (See § 1473.7, subd. (a).) The defendant challenged his guilty plea for one of the two enumerated reasons in the statute. (§ 1473.7, subd. (a)(1).) And the defendant filed his motion for relief with reasonable diligence after he received notice that his conviction is the basis for deportation proceedings. (§ 1473.7, subd. (b)(1).) Simply based on the plain words of the statute, it is clear that there is no requirement that the defendant had pled guilty or nolo contendere to a felony after section 1473.7's effective date. Alternatively stated, the statute's own language indicates that it can be applied retroactively if the moving party satisfies the requirements of the statute.

Our interpretation of section 1473.7 is buttressed by the explanation of its purpose.

> "Under existing law, although persons not presently restrained of liberty may seek certain types of relief from the disabilities of a conviction, the writ of habeas corpus is generally not available to them. Existing law creates an explicit right for a person no longer unlawfully imprisoned or restrained to prosecute a motion to vacate a judgment based on newly obtained evidence of fraud or misconduct by a government official, as specified.
>
> "This bill would create an explicit right for a person no longer imprisoned or restrained to prosecute a motion to vacate a conviction or sentence based on a prejudicial error damaging the moving party's

12

> ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere, or based on newly discovered evidence of actual innocence, as specified. The bill would require a court to grant the motion if the moving party establishes a ground for relief, by a preponderance of the evidence. The bill would require a court granting or denying the motion to specify the basis for its conclusion." (Legis. Counsel's Dig., Assem. Bill No. 813 (2015-2016 Reg. Sess.).)

As the People emphasize, section 1473.7 allows a defendant, who is no longer in custody, to challenge his or her conviction based on a mistake of law regarding the immigration consequences of a guilty plea or ineffective assistance of counsel in properly advising the defendant of the consequences when the defendant learns of the error postcustody. There is no requirement in the statute that the defendant had to have pled guilty after the effective date of the statute.

Additionally, we are not persuaded by the People's argument that retroactive application of section 1473.7 "would open the floodgates for litigation seeking to upend society's interest in the finality of their convictions" and allow "absurd results." In some sense, every new right the Legislature confers on a convicted defendant that allows the defendant to challenge a conviction potentially "opens the floodgates." That said, the Legislature decided to bestow such a benefit under section 1473.7, and it is not our role to question the Legislature's wisdom in this regard. Moreover, the Legislature included certain safeguards to protect against the People's concerns. As discussed above, the statute contains a timeliness requirement. Also, the statute requires the moving party to prove by a preponderance of the evidence that he or she is entitled to relief. (§ 1473.7,

13

subd. (e)(1).)  And the court has discretion to grant or deny the motion and must specify the basis of its conclusion.  (§ 1473.7, subd. (e)(2).)

With this background in mind, we cannot say that section 1473.7 does not apply to Perez.  Nor do we see anything in the statute that warrants our proclamation that section 1473.7 can only be applied prospectively.  Instead, a court needs to evaluate whether a moving party satisfies the required elements to bring a motion under the statute.  Thus, we turn to the superior court's order denying Perez's motion.

The superior court found that Perez's motion under section 1473.7 was untimely. There is not much in the record to explain the court's reasoning for this conclusion.[7] Although given the opportunity to do so, Perez's counsel did not offer any argument at the hearing on Perez's motion.  Instead, she submitted on the tentative, which was against her client.  In the minute order denying Perez's motion, the court decreed that the motion was untimely, noting that (1) Perez was at least aware of the immigration consequences of his plea when he was deported in 2006 and (2) Perez took no action until early 2017 to challenge those consequences.  Absent in the court's order is any reference to the timeliness requirement found in section 1473.7, subdivision (b)(1) and (2).  Thus, it appears the court's untimeliness analysis was not based on the statute, but instead, on more equitable considerations.  That said, we struggle to agree with the superior court that Perez's motion was untimely when the rights giving rise to the motion did not take

---

7      The People argue the court's conclusion that Perez's motion was untimely "perhaps" underscored that the court believed that section 1473.7 could not apply retroactively.  We find no support for this assertion in the record.

14

effect until January 1, 2017 and the court only appeared to consider Perez's actions before that date.

Further, Perez brought his motion under section 1473.7 about seven weeks after the statute's effective date. The passage of seven weeks did not render Perez's motion untimely, at least under the terms of section 1473.7. Accordingly, we find nothing in the record indicating that Perez's motion was untimely. Nevertheless, our disagreement with the superior court regarding the timeliness of the motion does not necessarily carry the day for Perez on his appeal. Ultimately, " 'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.)

On the record before us, even if we assume Perez's motion was timely, we nonetheless conclude that Perez did not satisfy his burden of proving by a preponderance of the evidence that he is entitled to relief under section 1473.7. Simply put, the record belies Perez's contention that he did not meaningfully understand the immigration consequences of his plea. Although Perez did not speak English, a Spanish interpreter was provided for him. That interpreter stated that she translated the entire plea form for Perez. The plea form translated for Perez, initialed and signed on Perez's behalf, indicated that his guilty plea could result in his deportation. It also indicated that if he pled guilty to certain enumerated crimes (such as felony possession of any controlled substance), he would be deported. In other words, the plea form, translated by an interpreter for Perez and explained to Perez by his attorney and the interpreter, informed him that he would be deported if he pled guilty. Further, and more importantly, the

15

superior court explicitly informed Perez that if he were to plead guilty, he would be deported from the United States. The court was unequivocal about the immigration consequences of a guilty plea, reiterating that the federal government would not allow Perez to become a citizen of the United States. This was not a situation where the court informed a defendant that there was "a high likelihood" that he would face deportation. (*United States v. Rodriguez-Vega* (9th Cir. 2015) 797 F.3d 781, 791.) The court below left no doubt. Perez would be deported if he pled guilty. This is the only evidence in the record that is contemporaneous to Perez's guilty plea.

Moreover, Perez does not address this unambiguous record on appeal. Instead, he offers his own declaration, executed more than 11 years after he pled guilty, wherein he claims his attorney never explained the immigration consequences of his guilty plea and he did not understand he would be deported if he pled guilty. We find nothing in the transcript of his plea hearing or Perez's plea form that offers a scintilla of support for Perez's position here. To the contrary, the record could not have been more clear. The court noted that Perez was emotional and asked if it was because he would be deported. The attorney, in the presence of Perez and the interpreter, stated that Perez was upset about being deported and indicated that he discussed the issue with Perez. The court asked Perez if he wanted to continue the hearing. Before Perez pled guilty, the court told Perez he would be deported if he pled guilty. And Perez's plea form, which he admitted was explained to him by the interpreter and his attorney, reiterated that he would be deported if he pled guilty. Considering this record, we struggle to contemplate how Perez

16

could have been more indisputably informed of the immigration consequences of his guilty plea.

Also, to the extent that Perez is claiming his counsel was constitutionally ineffective because he did not defend against the immigration consequences of his plea by negotiating an immigration safe disposition, Perez offers no evidence to support his position. There is no indication in the record that the prosecution was willing to agree to an immigration safe disposition. Similarly, there is no suggestion that Perez's counsel did not attempt to negotiate such a disposition. Instead, Perez merely asks us to presume he did not do so because there were only two court hearings before the disposition. We cannot make any such presumption. An appellant has the burden of establishing, based on the record on appeal and based on facts, not speculation, that counsel rendered ineffective assistance of counsel. (*People v. Stephenson* (1974) 10 Cal.3d 652, 661 ["The proof of this inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter."].)[8]

## DISPOSITION

The order is affirmed.

---

[8] A claim of ineffective assistance of counsel has two components—deficient performance and prejudice resulting from it. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To the extent that Perez claims his attorney was constitutionally ineffective in failing to inform him of the immigration consequences of his guilty plea, we cannot resolve that issue on the record before us. Perez's counsel represented to the court in the presence of Perez that he had informed Perez of the immigration consequences of his guilty plea and that Perez was upset at that hearing for that reason as well as others. In addition, Perez's counsel signed the plea agreement, indicating that he had discussed the immigration consequences of pleading guilty. Further, Perez told the court that he had very carefully reviewed his plea form with his attorney and interpreter.

17

HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.

18