Filed 8/31/20  P. v. Bran CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H046835 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. B1582411 ) |
| v. | |
| GUILLERMO BRAN, | |
| Defendant and Appellant. | |

Defendant Guillermo Bran appeals from the superior court's denial of his Penal Code[1] section 1473.7 motion.  He contends that the court was required to hold a hearing on his motion and could not deny it without a hearing unless he waived his right to a hearing.  The Attorney General claims that defendant "was not entitled to a hearing on his motion because he was not eligible to bring the motion."  He asserts that defendant was ineligible because he remained on parole and therefore was still in "criminal custody" both when he filed and when he renewed his section 1473.7 motion.  Defendant replies that considering those on parole to be ineligible to bring a motion under section 1473.7 violates his right to equal protection.

We reject defendant's claims.  He was statutorily ineligible to bring a section 1473.7 motion under the statute because he was on parole, and his equal protection rights were not violated because he was not similarly situated to those who are

---

[1] All further statutory references are to the Penal Code.

eligible to bring such a motion since, unlike them, he was entitled to seek habeas relief. Accordingly, we affirm the superior court's order denying his section 1473.7 motion.

## I.    BACKGROUND

Defendant came to the United States from El Salvador in 2005.  He lived for a time in a storage shed behind the Sunnyvale home where Jose G. lived with his family, which included Jose's minor son K.  Defendant's wife joined him in 2008.

Jose's wife contacted the police in January 2013 and reported that fifteen-year-old K. had told her that he had been sexually assaulted five years earlier.  She told the police that she had learned of the sexual assault nine days earlier, shortly after she and Jose discovered that K. had a boyfriend.  K. then told his mother that he was bisexual and that he had been sexually assaulted by his father's friends, defendant and Wilmer Vasquez, beginning when he was 10 years old.  K. said that these forcible assaults took place in the storage shed behind the Sunnyvale home.

The police interviewed K. shortly after his mother's report.  He told them that defendant had begun sexually abusing him when he was 10 years old.  The abuse began with touchings and progressed to forced oral copulation and forcible sodomy.  Defendant did not use a condom and threatened to kill K. and his family if he told anyone. The abuse occurred "many times" and ceased only when defendant's wife came from El Salvador to live with him.  However, in 2012, defendant sodomized him again and threatened to kill him "if he cheated on him with another person."  Vasquez also sodomized K. beginning when he was 10 years old and continuing for a period of five months.  Although the 2013 police interview with K. was recorded, the recording was not preserved.

The police interviewed K. again in January 2014.  K. told them that when he was nine or 10 years old, defendant had begun touching K.'s penis and buttocks.  After a couple of weeks of touchings, defendant, smelling like beer, forcibly removed K.'s clothing and sodomized him "without no condom."  Defendant also forced K. to

masturbate him.  Afterwards, defendant told K. not to tell anyone or he would kill K. or "rape your sister."  Over time, defendant sodomized K. 15 times.  The initial events occurred in Sunnyvale, but the abuse continued when K. moved to Los Banos and also occurred at an apartment in Mountain View.  The last event occurred in the Mountain View apartment when K. was 12 years old.  On that occasion, defendant forced K. to orally copulate him, sodomized K., and not only threatened to kill K. but also had a knife.  K. told the police that two other friends of his father, "Gomer" and Vasquez, had also raped him.  K. told the police that he had told his best friend about the abuse.  The police interviewed K.'s best friend, and she told the police that K. had told her in February 2012 that he had been sexual abused but had not identified the perpetrator.

The police interviewed defendant in April 2015, and defendant denied any wrongdoing.  In October 2015, a complaint was filed alleging that defendant had committed one count of lewd acts (§ 288, subd. (a)) and four counts of aggravated sexual assault on a child under 14 (§ 269).  Defendant was arrested in November 2015.

The preliminary examination commenced on November 2, 2016.  After K. had testified on direct and been extensively cross-examined by defendant's trial counsel, and defendant's trial counsel had said that she had another "40 minutes" of cross-examination, the court continued the hearing to December 5 and ordered K. to return at that time.[2]  K. failed to appear at the continued hearing and "said that he wasn't going to come."  Defendant's trial counsel moved for dismissal, and the prosecutor asked the court to instead strike K.'s testimony and permit the prosecutor to "start from the beginning with 115."  Alternatively, the prosecutor requested a short continuance to obtain K.'s presence.

---

[2] K.'s stricken testimony at the preliminary examination was largely similar to his prior statements to the police.  He also testified that there was one occasion when Vasquez and defendant forced him to orally copulate both of them and both sodomized him.

3

The court denied the prosecutor's request for a continuance because it found no good cause, but it agreed to strike K.'s testimony and allow the prosecution to "proceed under 115." The defense then requested a continuance, which the court granted. The hearing was continued to December 12, 2016. K. was served with a subpoena on December 8 for the December 12 hearing. On December 15, the hearing was continued to February 27, 2017, and the prosecution stipulated that its offer—five years in prison for "a 288(b)(1)"—would remain open until a readiness hearing scheduled for January 25. In December 2016, Jose told a defense investigator that "he believed his son."

At the January 25, 2017 hearing, counsel announced that they had reached a negotiated resolution. The plea agreement provided that defendant would receive a five-year prison sentence in exchange for his no contest plea to a newly added single count charging a forcible lewd act (§ 288, subd. (b)(1)) that had occurred between 2006 and 2008. The remaining counts would be dismissed. The written plea agreement contained defendant's acknowledgement concerning immigration consequences of his plea: "I understand if I am not a citizen of the United States, my plea of guilty or no contest in this case may result in my deportation (removal), exclusion from admission (re-entry) to the United States, or denial of naturalization and amnesty pursuant to the laws of the United States. My attorney has talked to me about this, and I am entering my plea understanding these consequences." Defendant also agreed in the written plea agreement that "there is a factual basis for my plea . . . ." His trial counsel, Lucy McAllister, stipulated that there was a factual basis for the plea.

At the change-of-plea hearing, the court orally informed defendant: "If you are not a citizen of the United States, and I'm not asking you whether you are or you are not, conviction of this crime can lead to your deportation or removal from the United States. Denial of reentry to the United States. Or denial of naturalization o[r] citizenship." Defendant's trial counsel orally stipulated that there was a factual basis for the plea, and defendant entered his plea of no contest. At the March 2017 sentencing hearing, the

4

court imposed what it described as "the low term of five years" and awarded defendant 584 days of credit for time served. The remaining counts were dismissed. Defendant was informed that he would be on parole for 10 years after he completed his prison term.

In May 2017, the Department of Corrections and Rehabilitation (CDCR) sent a letter to the court informing it that the appropriate sentencing triad for defendant's offense was three, six, or eight years and suggesting that the sentence "may be in error . . . ."[3] In June 2017, the court, noting that defendant's sentence was "an illegal sentence," resentenced defendant to three years in prison.

In January 2018, an immigration detainer was filed against defendant.

In April 2018, defendant filed a pro per motion to vacate his conviction under section 1473.7 on grounds of ineffective assistance of counsel and "[n]ewly discovered evidence of actual innocence . . . ." Defendant claimed that he had believed that he was entering an "Alford" plea[4] and that his trial counsel had prejudicially misinformed him of the nature of the plea. He expressed the inaccurate belief that an *Alford* plea would have eliminated the immigration consequences that he now faced.

Defendant also claimed that he had discovered evidence of his actual innocence in the form of a declaration from Jose that K. had told Jose that defendant had not abused him. Jose declared that his son had "confessed" to him that defendant "never abused him" and that his allegations had been part of "a plot" concocted by K.'s uncle, who was involved in a sexual relationship with K., "to place [defendant], an innocent man in

---

[3] Between 2006 and 2008—the charged time period—the penalty for a section 288, subdivision (b)(1) offense was three, six, or eight years in prison. (Stats. 2004, ch. 823, § 7.) The penalty was increased to five, eight, or 10 years in prison in September 2010. (Stats. 2010, ch. 219, § 7.)

[4] An *Alford* plea is "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." (*North Carolina v. Alford* (1970) 400 U.S. 25, 35.)

prison." The reason for this "plot" was to prevent defendant from revealing his knowledge of the sexual relationship between K. and K.'s uncle.

In June 2018, the court, without holding a hearing, denied defendant's section 1473.7 motion on the ground that defendant "is still imprisoned for his conviction in this case, so he is not eligible for relief under the statute." Nevertheless, the court considered defendant's motion to be a petition for a writ of habeas corpus and evaluated his contentions on their merits. The court found that defendant's trial counsel had not been prejudicially deficient because defendant had acknowledged in his plea agreement that there was a factual basis for the plea and that he was entering a no contest plea, and his trial counsel had tried, without success, to persuade the prosecution to accept an *Alford* plea. The court issued an order to show cause on the actual innocence claim, and counsel was appointed to represent defendant on that claim. In October 2018, the immigration court ordered defendant deported. He was detained in the Yuba County jail.

In support of his habeas petition, defendant claimed that an evidentiary hearing was necessary to resolve disputed factual issues and make credibility determinations. The prosecution argued that defendant had failed to show that his newly discovered evidence undermined its case against him. It claimed that Jose's declaration was "implausible and smells of fraud." The prosecution attached an investigator's report of his interviews with K. and Jose. K. denied that he had ever told Jose that his accusations were false, and he asserted that Jose was "having an affair with the defendant's wife and was lying about many things and behaving strangely." Jose refused to answer the investigator's questions.

Defendant responded with a supplemental declaration by Jose. Jose confirmed that defendant had lived in a storage shed on Jose's property in 2007. He declared that his brother-in-law, Wilfredo Cruz, had lived with Jose in the main house at the same time. In 2008, Jose's cousin, Vasquez, moved into Jose's home. Jose declared that he did not believe K.'s allegations and believed instead that Cruz had abused K. Jose stated

6

that K. had told him that Cruz gave him money. In 2009, Jose and his family moved to an apartment. In 2010, Jose began an affair with defendant's wife. Jose's wife learned of the affair in 2012. In 2013, K. told Jose that Vasquez had sexually abused him. When Jose later asked K. about this abuse, K. told Jose that defendant had also abused him. In April 2015, Jose learned that K. had told the police that defendant had sexually abused him. In 2016, Jose overheard K. tell his mother that he would "tell the truth about his allegations of sexual violence" if Cruz hurt Jose. Jose declared that he did not believe K. He believed that defendant had been "wrongfully convicted," and he asserted that K. "tends to make things up and exaggerate."

Defendant also submitted his own declaration in support of his habeas petition. He asserted that his trial counsel had told him that an *Alford* plea would not result in immigration problems. He declared that he did not learn until much later that the type of plea made no difference in terms of immigration consequences.

In December 2018, defendant sought permission to file a supplemental habeas petition. In the supplemental petition, he asserted that the recent amendment of section 1473.7, which changed the eligibility requirement from "no longer imprisoned or restrained" to "no longer in criminal custody," meant that he was eligible to make a motion under that section because, he alleged, he was no longer in "criminal custody."

Defendant's supplemental petition was largely devoted to his new claim that his trial counsel had been prejudicially deficient in advising him to accept the plea offer "without review of all material evidence, correct advice as to the immigration consequences and sentencing triad for the offense, and undue pressure." He maintained that his trial counsel failed to obtain adequate discovery, failed to accurately inform him of the immigration consequences of his plea and of the correct prison terms for the offense to which he was pleading, and applied undue pressure to persuade him to accept the plea agreement by advising him to accept the agreement and telling him that his wife was having an affair with Jose and would not help him. He claimed that his trial

7

counsel's actions and inactions created a situation where he "lost all hope" and accepted the plea agreement. Defendant asserted that there was a reasonable probability that he would not have accepted the plea agreement if his trial counsel had performed competently.

Defendant also faulted his trial counsel for failing to respond to his letters to her about Jose's subsequent willingness to help him prove his innocence. His supplemental petition reiterated his claim that K. had "falsely testified within the meaning of Penal Code, section 1473 and 1473.7." He argued that K. lacked credibility and that his own claim of innocence plus character letters showed that he did not commit the offense.

In February 2019, the superior court denied defendant's petition and supplemental petition. The court found that even under the amended version of section 1473.7 defendant remained ineligible to file a section 1473.7 motion because he remained on parole, which meant he was still in "criminal custody." The court found that the "new evidence" provision in section 1473 did not apply to defendant because he had not had a "trial" and no evidence had ever been introduced against him. Furthermore, the court found that the "new evidence" defendant had provided was not "of such decisive force and value that it would have more likely than not changed the outcome." Nor had defendant established that the new evidence showed that K.'s "allegations were false." The court concluded that defendant had produced "insufficient evidence" to support his ineffective assistance claim because he did not show that he "would not have pleaded guilty" even if his trial counsel had performed competently. Defendant timely filed a notice of appeal from the court's denial of his renewed section 1473.7 motion.[5]

---

[5] Defendant also filed a habeas petition *In re Guillermo Bran* (H046737) in this court addressing the issues he raised in his habeas petition and supplemental habeas petition in the superior court. We dispose of that petition by separate order.

## II.  DISCUSSION

Defendant's sole contention on appeal is that the superior court erred in *failing to hold a hearing* on his section 1473.7 motion before denying the motion.  He insists that, because the statute mandates a hearing on a motion, he is entitled to a remand for the court to hold one.

Section 1473.7 provides:  "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for either of the following reasons: [¶]  (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.  [¶]  (2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice. . . . [¶] . . . [¶]  (d) All motions shall be entitled to a hearing.  Upon the request of the moving party, the court may hold the hearing without the personal presence of the moving party provided that it finds good cause as to why the moving party cannot be present.  If the prosecution has no objection to the motion, the court may grant the motion to vacate the conviction or sentence without a hearing.  [¶] . . . [¶]  (f) An order granting or denying the motion is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of a party."

The issue before us is not whether section 1473.7 mandates a hearing.  It clearly does:  "[a]ll motions shall be entitled to a hearing."  Instead, we must determine whether a remand for a hearing is necessary in this case where defendant was *statutorily ineligible to file* a section 1473.7 motion.  "[R]emand is not appropriate when it would be an idle act."  (*People v. Jefferson* (2019) 38 Cal.App.5th 399, 409.)  "Section 1473.7 permits persons unable to assert habeas or section 1016.5 claims to have standing to challenge a conviction.  To obtain relief per this statute, the individual cannot be in custody or under

9

restraint." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 221.) A parolee is ineligible to seek relief under section 1473.7 because a person on parole is in custody for purposes of seeking habeas relief. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1131; see *People v. Villa* (2009) 45 Cal.4th 1063, 1069 [individuals on parole are entitled to seek habeas relief]; *In re Jones* (1962) 57 Cal.2d 860, 861, fn. 1 ["persons on parole" are entitled to seek habeas relief].)

Defendant claims that a hearing was necessary "to resolve any disputed factual issues, including credibility determinations," but he fails to identify any disputed factual issues concerning his ineligibility to file a section 1473.7 motion, the only issue that was resolved by the superior court. He did not and does not dispute that he remains on parole and therefore in "criminal custody."

Defendant's reliance on *People v. Fryhaat* (2019) 35 Cal.App.5th 969 (*Fryhaat*) is misplaced. In *Fryhaat*, the superior court held a hearing, but the defendant was not present and his appointed counsel could not adequately represent him at the hearing because he had had no communication with the defendant, who was in immigration custody. (*Id.* at pp. 977-978.) It was undisputed in *Fryhaat* that the defendant, who was no longer in prison for his offense or on parole for it, was statutorily entitled to file a section 1473.7 motion. Indeed, the Attorney General in *Fryhaat* conceded that the defendant was entitled to a remand for a hearing on his section 1473.7 motion. (*Fryhaat*, at p. 973.)

Defendant, unlike the defendant in *Fryhaat*, remains on parole and therefore is ineligible to file a section 1473.7 motion because he remains eligible to seek habeas relief. The plain language of section 1473.7 reflects the Legislature's intent that those eligible for habeas relief be ineligible to file a motion under the amended version of section 1473.7. Even if there were any ambiguity, the legislative history unerringly reflects that the Legislature understood "criminal custody" to be precisely what was

10

required for a person to bring a habeas petition, which includes the constructive custody created by parole.

"Prior to the enactment of [the original version of section 1473.7], individuals who gained access to evidence of actual innocence, or to proof of a defect in the underlying criminal proceeding, had no legal vehicle to present this evidence *after their criminal custody* had expired. This lack of a remedy had a particularly devastating impact on California's immigrant communities." (Sen. Com. on Public Safety, Analysis of Assem. Bill 2867 (2017-2018 Reg. Sess.) p. 4, italics added.) "Actual incarceration in prison or jail is not required for a petition for writ of habeas corpus; persons on bail, probation, parole, or committed to a state hospital are considered to be in constructive custody for purposes of habeas corpus writ review. [Citations.] However, federal immigration custody alone, does not qualify as 'custody' for purposes of habeas corpus writ review. [Citation.] [The original version of section 1473.7] remedied that limitation by creating a procedure through Penal Code section 1473.7 that allows individuals detained in federal immigration custody to seek relief from a conviction that they did not understand would have adverse immigration consequences." (*Id.* at p. 5.) Thus, section 1473.7 clearly was not intended to create an avenue for relief for those, like defendant, who remain eligible for habeas relief.[6]

Defendant argues we should conclude otherwise because the Attorney General asserted a "contrary" position in *People v. Perez* (2018) 19 Cal.App.5th 818 (*Perez*), which defendant considers the more sensible position. In *Perez*, the issue was not

---

[6] Defendant asserts that section 1473.7 provides for a "more favorable standard of relief" than is available on habeas. He claims that a section 1473.7 motion can succeed without "a finding of fault as must usually be shown when seeking habeas relief." Defendant provides no further explanation and cites only section 1473.7, subdivision (a)(1) as support for this counterintuitive claim. That subdivision requires a finding of "prejudicial *error*," which necessarily involves some fault. (§ 1473.7, subd. (a)(1), italics added.) We decline to further analyze this unsupported claim.

whether a defendant on parole remained in criminal custody or whether such a defendant was eligible to file a section 1473.7 motion. The issue in *Perez* was whether section 1473.7 applied retroactively to those who had pleaded guilty prior to the statute's enactment. (*Perez*, at p. 821.) Perez had pleaded guilty in 2005 and been sentenced to 365 days in custody. He was deported in 2006. In 2017, he filed a section 1473.7 motion. Obviously, he was no longer in criminal custody at that time. The Attorney General's assertions in *Perez*, and the Fourth District Court of Appeal's dicta in that case, are irrelevant to our analysis. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.) Section 1473.7 plainly does not apply to a person, like defendant, who remains on parole and therefore in criminal custody.

Defendant alternatively claims that the superior court's failure to hold a hearing on his motion violated his equal protection rights because all persons "detained in a deportation facility" are "similarly situated" regardless of whether they are on parole.

" ' " 'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " ' [Citation.] It is often stated that '[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citation] The use of the term 'similarly situated' in this context refers only to the fact that ' "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." . . . ' [Citations.] There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The 'similarly situated' prerequisite simply

12

means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar *with respect to the purpose of the law in question* that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714, second italics added.)

Defendant's equal protection claim does not require further analysis because those eligible to file a section 1473.7 motion are not sufficiently similar with respect to the purpose of section 1473.7 to merit further scrutiny. The unmistakable purpose of section 1473.7 was to provide a remedy for those who are no longer eligible to seek habeas relief because they are no longer in criminal custody. Defendant, unlike those eligible to file section 1473.7 motions, remains eligible to seek habeas relief due to his parolee status. Hence, his equal protection claim cannot succeed.

## III.   DISPOSITION

The order is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P.J.



_____

GROVER, J.



*People v. Bran*
H046835